SO ORDERED.

SIGNED this 14th day of January, 2020.



_____

Designated for online publication only
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br>Ronald Braden Bartlett and<br>Claudia Anne Bartlett,<br><br>        Debtors. | Case No. 19-40050<br>Chapter 13 |
| Ronald Braden Bartlett and<br>Claudia Anne Bartlett,<br><br>        Plaintiffs,<br><br>v.<br><br>Mainstreet Credit Union,<br><br>        Defendant. | Adv. No. 19-07003 |

Memorandum Opinion and Judgment
Granting Debtors' Complaint

In this adversary proceeding, Plaintiff/Debtors Ronald and Claudia Bartlett[1] request the Court to determine whether the claim of Defendant Mainstreet Credit Union[2] is secured by a mortgage lien on Debtors' residence, located on East Park Street in Olathe, Kansas (Residence). Debtors contend because the value of the Residence is less than the first mortgage lien held by another creditor, Defendant's security interest is stripped off and its claim is wholly unsecured and dischargeable in the underlying Chapter 13 case. The parties stipulate to the jurisdiction of the Court and consent to trial and entry of a final order by the Bankruptcy Court.[3]

I. **Findings of Fact**

Debtors seek to strip off Defendant's security interest in the Residence, thereby causing Defendant's claim to be unsecured and treated as a general unsecured debt under §§ 506(a) and 1322(b)(2).[4] Defendant does not challenge the proposition that if the value of Debtors' Residence is less than the amount of the first mortgage lien, the antimodification clause of § 1322(b)(2) does not

---

[1] Debtors are represented by Adam M. Mack of Mack & Associates.

[2] Defendant is represented by Bruce Strauss, of Merrick, Baker, & Strauss, P.C.

[3] Doc. 20.

[4] All references to title 11 in the text shall be to the section number only.

2

bar Debtors from stripping off the junior lien.[5] The only issue here is whether the value of the Residence is less than $107,948.82, the stipulated amount of the first mortgage lien.

The facts regarding the relevant loans are stipulated. At the time of filing this Chapter 13 case on January 22, 2019, Debtors were indebted to Defendant in the approximate amount of $34,551.56, and the note was secured by a second priority mortgage lien on the Residence. The first priority mortgage lien is held by PNC Mortgage and as of the date of filing was secured and had a balance of $107,948.82, as stated on its proof of claim filed on March 25, 2019. Debtors' expert Toby Breer appraised the Residence at $100,000. Defendant's expert Paul McMahon appraised the Residence at $140.000. Trial was held on November 18, 2019, to determine the value of the Residence.

Debtor Claudia Bartlett testified about the Residence. It is approximately 100 years old. Debtors have owned and lived in the Residence for about 40 years. It is located in an older part of Olathe, Kansas. Fast food

---

[5] This principle is settled law in this circuit. *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 328-31 (1993); *Griffey v. U.S. Bank (In re Griffey)*, 335 BR. 166, 170 (10th Cir. BAP 2005). *See also Woolsey v. Citibank, N.A. (In re Woosley),* 696 F.3d 1266, 1279 (10th Cir. 2012).

and a drug store are one half block away. There is an apartment building across the street.

Defendant's loan was made in 2007, before an apparently minor fire in the Residence. When making repairs after the fire, asbestos was sprayed. Thereafter, a roof leak has caused kitchen ceiling boards to warp, releasing asbestos in the air. Debtor testified that there is lead paint and mold in the Residence, that the driveway is crumbling, that the sewer needs to be replaced, the porch sags, and that roof leaks have damaged some ceilings. According to Debtor Claudia Bartlett, real property taxes were based upon a valuation of $156,000 in 2018 and $172,900 in 2019.[6] Debtors have paid the taxes without protest.

## II. Conclusions of Law

As stated above, as of the petition date,[7] Debtors' expert appraiser valued the Residence at $100,000 and Defendant's expert appraiser valued it

---

[6] When making its determination, the Court does not consider the value of the Residence used by Johnson County when assessing real property taxes. The Court was provided no evidence of the basis for that value or how it relates to the fair market value of the Residence.

[7] Debtors' appraiser's initially valued the Residence as of September 13, 2018. That appraisal was updated as of July 16, 2019, and the value was found not to have changed. Therefore Debtors, without objection, rely upon the September 2018 appraised value. Defendant's appraisal values the Residence as of February 11, 2019.

at $140,000. There was no disagreement between experts as to methodology. Both relied exclusively on the comparable sales approach, under which an estimated fair market value of the Residence was made by surveying the market and comparing the Residence to similar properties that have been recently sold and making appropriate adjustments for differences between the properties. Both experts classified the Residence as falling within Condition Rating C4, defined by both appraisers as follows:

> The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Both talked with Debtors about the Residence and inspected the interior and exterior. Both experts were well qualified and unbiased. Both opined that it was unusual for there to be such a large percentage difference between the values determined by two appraisers using the same approach.

The specifics and differences between the two reports are most economically and efficiently reviewed in the context of evaluating which appraisal is more applicable to this situation. Based upon the following, the Court adopts the $100,000 value as found by Debtors' appraiser as the value of the Residence on the date of filing for purposes of lien avoidance.

5

Case 19-07003    Doc# 34    Filed 01/14/20    Page 5 of 10

Neither of the appraisal reports stands out as clearly superior. Multiple factors contributed to the different conclusions. Debtors' expert relied upon three comparables all of which sold for less than the market value he determined for the Residence, and Defendant's expert relied on five comparables all of which sold for more than the market value he determined for the Residence. There is no overlap between the comparables selected. The three comparables used by Debtors' expert were located less than a mile from the Residence, were between 90 and 100 years old, and were sold less than a year before the appraisal date. Defendant's five comparables were located within less than one half mile of the Residence, were between 107 and 139 years old, with the exception of one newer home that was 60 years old, and were sold within one year of the appraisal date.

The appraisers agree that the condition of the Residence is a significant factor in their appraisals. The appraisers also agree that the Residence Condition Rating is C4. Debtors' appraiser used only C4 comparables. All of Defendant's appraiser's comparables were Condition Rating C3, with the exception of one having Condition Rating C4. Condition Rating C4 is defined as quoted above; Condition Rating C3 is defined as follows:

> The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building

6

component, may be updated or recently rehabilitated.
The structure has been well maintained.

Defendant's appraiser's adjustments to the sale price of comparables because of the differences in Condition were $50,000 for one property and $25,000 for three properties. No adjustments for condition were required for Debtors' appraisal.

The Residence has a finished basement, which is unusual in homes of comparable age. Defendant's appraiser selected some of his comparables because they had finished or partially finished basements. He adjusted the value of the two properties which did not have finished basements by increases of $21,000. None of Debtors' comparables had finished basements, and he made $8000 adjustments to account for this characteristic.

In the aggregate, Defendant's appraiser made significantly greater adjustments to the sale prices of the comparables based upon specific characteristics of the Residence than did Debtors' appraiser. The gross adjustments (the sum of the positive and negative adjustments) made by Defendant's appraiser to each of his comparables were 53.3%, 26.7%, 30.0%, 42.8%, and 53.7% of the sales prices, respectively. The gross adjustments made by Debtors' appraiser were 24.0%, 21.5%, and 12.6% of the sales prices, respectively. The net adjustments made by Debtors' appraiser were increases

7

of 21.4%, 19.35% and 12.6%. The net adjustments made by Defendant's appraiser were reductions of 6.2%, 1.3%, 10.0%, 4.5% and 2.3%, even though the comparables were mostly Condition Rating C3 and the Residence is Condition Rating C4.

The testimony and the appraisal reports convinces the Court that the adjustment of the sales price of comparables properties is not exact and requires the use of professional judgment. Consequently, once comparable properties are selected, fewer gross adjustments are likely to indicate a more reliable estimate of market value. In this case, the Court finds the possibility of an inaccurate result greatly enhanced by the magnitude of the gross adjustments in the Defendant's appraisal.

Defendant questioned the Debtors' appraiser's reliance on comparable properties sold while vacant, particularly his first comparable located on Church Street. The comparison uses data from an August 2018 sale for $76,000, when the property was in foreclosure. The pictures accompanying the listing show a vacant property with some ceiling repair but obvious need for additional renovation. After that sale, the Church Street comparable property was rehabilitated and was sold in 2019 for $156,000. Defendant essentially contends that the Residence is more similar to the first comparable at the time of the second rather than the first sale.

The Court finds that Debtors' appraiser convincingly defended his report. As he pointed out, property occupancy is not a factor in the condition definitions. The appraisers agree that there are very few Condition Rating C4 properties near the Residence. The alternative was to select vacant comparables, as did the Debtors' appraiser, or to select comparable properties having Condition Rating C3, as did Defendant's appraiser. But the latter alternative requires large adjustments to the sale prices.

The Court agrees with Debtors' appraiser that the condition of the Residence is similar to the Church Street property at the time of the first sale. Debtors' testimony and the photographs accompanying both appraisals, show a property in need of significant repair. Defendant's appraiser testified that in his opinion the Residence needs about $25,000 of work. The Court agrees with Debtor's appraiser's observation that only if the Residence is renovated would it likely have a sales value similar to the Church Street property at the time of the second sale.

### III. Conclusion

For the forgoing reasons, the Court finds that for purposes of this adversary proceeding, the fair market value of the Residence as of the date of filing of the petition was $100,000. Debtors' complaint is therefore granted,

9

Case 19-07003    Doc# 34    Filed 01/14/20    Page 9 of 10

and the claim of Defendant Mainstreet Credit Union shall be considered unsecured.

**Judgment**

Pursuant to Federal Rule of Bankruptcy Procedure 7052, which makes Federal Rule of Civil Procedure 52 apply to this proceeding, the Court has announced its Findings of Fact and Conclusions of Law and ruled that the fair market value of Debtors' Residence on the date they filed their petition was less than the amount of the first mortgage lien on the Residence. Based upon the foregoing, including those Findings and Conclusions, and in accordance with Bankruptcy Rule 7058 and Civil Rule 58(a), judgment is hereby entered granting Debtors' complaint and holding that the claim of Defendant Mainstreet Credit Union is wholly unsecured.

**It is so ordered.**

###